UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

NICOLE CUMBERBATCH,                                  Chapter 7
*aka* Nicole Cumberbatch-Cox                         Case No. 21-40360-ess
*dba* Gloria's In & Out III
*dba* Gloria's In & Out 3,

                        Debtor.

--------------------------------------------------------x

SHAQUAN WILSON & LANCE WHITE,

                        Plaintiffs,                  Adv. Pro. No. 23-01015-ess

-against-

NANDLAL CORP., RONALD COX,
NICOLE COX, MYC & ASSOCIATES, INC.,
and MARC P. YAVERBAUM,

                        Defendants.

--------------------------------------------------------x

MEMORANDUM DECISION ON MOTION TO DISMISS
ADVERSARY PROCEEDING OF DEFENDANTS
<u>MYC & ASSOCIATES, INC. AND MARC P. YAVERBAUM</u>

*Appearances:*

Edward R. Hall, Esq.                          Gary O. Ravert, Esq.
Balsamo, Rosenblatt & Hall PC                 Ravert PLLC
200 Schermerhorn Street                       16 Madison Square West (Floor 12, #369)
Brooklyn, NY 11201                            New York, NY 10010
  *Attorneys for Plaintiff Shaquan Wilson*      *Attorneys for MYC & Associates, Inc.*
  *and Lance White*                             *and Marc P. Yaverbaum*

February 15, 2024

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

This bankruptcy case began more than three years ago when, on February 13, 2021, Nicole Cumberbatch a/k/a Nicole Cumberbatch-Cox d/b/a Gloria's In & Out III d/b/a Gloria's In & Out 3 filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debra Kramer was appointed as the Chapter 7 trustee of Ms. Cumberbatch's Chapter 7 estate. And the property of Ms. Cumberbatch's Chapter 7 estate includes a three-family residential building located at 1553 Eastern Parkway in Brooklyn (the "Property").

On February 24, 2023, Shaquan Wilson and Lance White commenced this action in the Kings County Civil Court, Housing Division (the "Housing Court"). They brought this action on an emergency basis, claiming that they were unlawfully evicted from an apartment at the Property just four days earlier, on February 20, 2023, and seeking emergency relief to restore them to possession of that apartment (the "Housing Court Action").

And five days later, on March 1, 2023, defendant MYC & Associates, Inc., the Chapter 7 trustee's retained real estate broker, filed a Notice of Removal of this action in this Court and the Housing Court, and this action began in this Court. Notice of Removal, ECF No. 1. As stated in the Notice of Removal, "MYC is removing the State Court Action because the causes of action asserted in [that] Action affect property of the Debtor's bankruptcy estate over which the Bankruptcy Court has jurisdiction." Notice of Removal, ¶ 7.

MYC & Associates, Inc. and Marc P. Yaverbaum, a principal of MYC (the "MYC Defendants") now move to dismiss the Complaint[1] under Federal Rules of Civil Procedure

---

[1] This action was commenced in the Civil Court of the City of New York, County of Kings: Housing Part, by the filing of an Order to Show Cause In Lieu of Notice of Petition to Restore to

12(b)(1), (6), and (7), on several grounds.  They seek dismissal under Rule 12(b)(1), on grounds that this Court lacks subject matter jurisdiction to hear these claims, pointing to the *Barton* doctrine originating in the Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126 (1881). Motion of MYC & Associates and Marc P. Yaverbaum to Dismiss Adversary Proceeding, ECF No. 6 (the "Motion to Dismiss" or "MYC Mot."), ¶¶ 57-63.

The MYC Defendants also seek dismissal of the Complaint under Rule 12(b)(6) on grounds, among others, that "MYC . . . is entitled, as a court-appointed fiduciary, to qualified immunity for its acts taken in the course of its duties to the trustee."  MYC Mot. ¶ 64 (citing cases).

And finally, the MYC Defendants argue that the Complaint should be dismissed under Rule 12(b)(7) on grounds, among others, that the Plaintiffs have not joined a necessary party, the Chapter 7 trustee.  MYC Mot. ¶¶ 67, 68.

In sum, this Motion calls for the Court to answer three questions.  Does this Court lack subject matter jurisdiction to hear this action in light of the Plaintiffs' failure first to obtain leave of this Court to bring an action against the Chapter 7 trustee's retained real estate broker?  If so, then this action must be dismissed under Rule 12(b)(1).

Alternatively, do the MYC Defendants have qualified immunity, as court-appointed fiduciaries, for acts taken in the course of their duties to the Chapter 7 trustee, so that the claims asserted against them do not meet the plausibility threshold?  If so, then this action must be dismissed under Rule 12(b)(6).

---

Possession, together with the annexed affirmation of attorney Edward Hall and affidavits of petitioners Shaquan Wilson and Lance White.  Those filings, which are attached to the Notice of Removal, ECF No. 1, are referred to herein as the "Complaint" and Messrs. Wilson and White are referred to herein as the "Plaintiffs."

And finally, does the Complaint fall short because the Plaintiffs have not named a necessary party, the Chapter 7 trustee?  If so, then this action must be dismissed under Rule 12(b)(7).

The Court considers these questions in turn.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. Venue is proper before this Court pursuant to Judiciary Code Section 1408 and 1409. This is a core proceeding pursuant to Judiciary Code Section 157(b)(2)(A), (B), (E), and (M). "Core proceedings include, but are not limited to . . . matters concerning the administration of the estate;" "allowance . . . of claims against the estate," "orders to turn over property of the estate," and "orders approving the use or lease of property, including the use of cash collateral;" among other types of claims.  28 U.S.C. § 157(b)(2)(A), (B), (E), and (M).

## Background

### *Ms. Cumberbatch's Chapter 7 Bankruptcy Case*

This adversary proceeding arises in the context of Ms. Cumberbatch's Chapter 7 bankruptcy case, and is but one of four pending adversary proceedings pending in connection with that case.  The parties' familiarity with that extensive docket is assumed.  This Court describes certain developments over the course of this Chapter 7 bankruptcy case to provide some context to the matters at issue here.

As noted above, Ms. Cumberbatch filed her bankruptcy case three years ago, on February 13, 2021, and she has proceeded both *pro se* and with the assistance of counsel at various times

as that case has moved forward.  As of the date of this Memorandum Decision, there are some

251 entries on the docket of the bankruptcy case, and matters including property of the estate, the

automatic stay, whether Ms. Cumberbatch should receive a discharge, and whether particular

debts should be excluded from discharge, have been addressed by Ms. Cumberbatch, the Chapter

7 trustee, various creditors, and the Court.

And as the docket reflects, the Chapter 7 trustee has reached at least five settlements with

various parties that have been approved by the Court.  *See, e.g.*, *In re Cumberbatch*, Case No.

21-40360, Order Authorizing and Stipulation of Settlement by and between the Trustee and Nel-

Del Realty Associates LLC for the Distribution of Proceeds from the Sale of Debtors Real

Property Pursuant to 11 U.S.C. §§ 105(a) and 506(c) and Rules 2002 and 9019(a) of the Federal

Rules of Bankruptcy Procedure and Granting Such Other and Further Relief dated January 3,

2022, ECF No. 133; Order Approving Stipulation by and Between the Trustee and Stephon

Hinds dated June 6, 2022, ECF No. 149; Order Approving Stipulation by and between the

Trustee, Rhonda Henry and MYC & Associates, Inc. dated September 21, 2022, ECF No. 172;

Order Approving Stipulation of Settlement between the Trustee and YM Eastern Parkway LLC

dated January 25, 2023, ECF No. 186; Order Granting Trustee's Motion Pursuant to Bankruptcy

Rule 9019(a) for Entry of an Order Approving a Stipulation by and between the Trustee and Kim

Wilson dated October 13, 2023, ECF No. 234.

Notably, the time of the United States Trustee and the Chapter 7 trustee to object to Ms.

Cumberbatch's discharge has been extended to April 18, 2024.  *See In re Cumberbatch*, Case

No. 21-40360, Order Granting the Trustee's Motion under Bankruptcy Rule 4004 Extending

Trustee's Time to File Complaint Objecting to the Debtor's Discharge dated December 8, 2023,

ECF No. 244.

One of the assets of Ms. Cumberbatch's Chapter 7 bankruptcy estate is the Property, a three-family residential building located at 1553 Eastern Parkway in Brooklyn.  And on March 8, 2022, the Chapter 7 trustee filed a motion to sell this Property under Bankruptcy Code Section 363(f).  *See In re Cumberbatch*, Case No. 21-40360, Trustee's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 363 Authorizing and Approving Terms and Conditions of Trustee's Sale of Debtor's Real Property, ECF No. 138.  That motion was addressed by the parties and the Court from time to time as various related matters arose.

On January 13, 2023, the Chapter 7 trustee filed a motion to approve the terms and conditions of a sale of the Property at an auction to be conducted by MYC & Associates, Inc., the trustee's retained real estate professionals.  *See In re Cumberbatch*, Case No. 21-40360, Trustee's Motion for Entry of an Order (I) Authorizing and Approving Terms and Conditions of Sale for the Sale of the Debtor's Real Property; (II) Establishing Auction and Notice Procedures; (III) Fixing the Date for a Sale Confirmation Hearing; and (IV) Granting Related Relief, ECF No. 184.  And on February 23, 2023, the Court entered an Order authorizing and approving the terms and conditions for the sale of the Property, and setting an online auction date for February 28, 2023, among other relief.  *See In re Cumberbatch*, Case No. 21-40360, Order (I) Authorizing and Approving Terms and Conditions of Sale for the Sale of the Debtor's Real Property; (II) Establishing Auction and Notice Procedures; (III) Fixing the Date for a Sale Confirmation Hearing; and (IV) Granting Related Relief, ECF No. 189.

Next, on March 1, 2023, the day after the date set for the online auction, this adversary proceeding was commenced when the MYC Defendants filed a Notice of Removal to this Court of the Housing Court Action.  *See In re Cumberbatch*, Case No. 21-40360, ECF No. 194.  On March 6, 2023, despite the removal of the Housing Court Action to this Court, certain

proceedings continued in the Housing Court, and the Housing Court entered an order directing Mr. Wilson and Mr. White to be restored to possession of the apartment at the Property.

The following day, on March 7, 2023, the MYC Defendants sought prompt relief in this Court. This relief included, in substance, declarations that this adversary proceeding was properly removed to this Court; that unless and until this action was remanded, this Court has sole jurisdiction over the action; and that any acts taken or orders entered in the Housing Court Action after the removal of the action to this Court were void *ab initio*; among other relief. *See In re Cumberbatch*, Case No. 21-40360, Emergency Motion of MYC & Associates, Inc. and Marc P. Yaverbaum to Vacate Civil Court Order and the Related Proceedings and To Determine Jurisdiction (the "Motion to Vacate"), ECF No. 195.

On March 13, 2023, the Court held a preliminary hearing on the Motion to Vacate and entered an Order to Show Cause that, among other things, scheduled a hearing on the Motion to Vacate for March 17, 2023, at which the Debtor, the Chapter 7 trustee, MYC & Associates, Inc., Mr. White, Ravi Batra, Mr. Wilson, Nel-Del Realty Associates, LLC, Mr. Yaverbaum, and JPMorgan Chase Bank, NA appeared and were heard. At that hearing, the Motion to Vacate was granted in part. The Court found and concluded, among other things, that:

- the Housing Court Action "was timely and properly removed to this Court pursuant to 28 U.S.C. § 1446 as of March 1, 2023";

- any acts taken or orders entered after the Removal in the Housing Proceeding in the Civil Court of the City of New York, Housing Division, including the March 6, 2023 Housing Court Decision and Order, are void *ab initio*;

- unless and until the Housing Court Action "is remanded, this Court has sole jurisdiction over that matter"; and

- counsel for Mr. Wilson and Mr. White "agreed and acknowledged on the record of the March 17, 2023 Hearing that after Removal," the Housing Court Action "is pending in this Court and is no longer pending in the

6

Civil Court of the City of New York, Housing Division."

*In re Cumberbatch*, Case No. 21-40360, Order on Motion to Vacate and Determine Jurisdiction, ECF No. 212, at 2-3.

<u>*This Motion to Dismiss*</u>

The MYC Defendants move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1), (6) and (7), made applicable to adversary proceedings by Bankruptcy Rule 7012(b), on grounds that this Court lacks subject matter jurisdiction to hear these claims: that the action does not state a claim upon which relief can be granted; and for failure to join a party under Rule 19.

<u>The Context for this Motion.</u>  In light of the somewhat unusual procedural context for this motion, the MYC Defendants summarize certain aspects of the record in their motion, and the Court notes certain of those matters here.[2]

At the outset, the MYC Defendants state that this adversary proceeding was commenced by the Plaintiffs in the Housing Court, and, "[n]otwithstanding the existence of the automatic stay or the fact that there was a chapter 7 trustee in place, the petitioners did not seek relief from the automatic stay before" proceeding against Ms. Cumberbatch, the debtor in the underlying Chapter 7 bankruptcy case, and similarly did not name the Chapter 7 trustee as a party.  MYC Mot. ¶ 1.  They also state that "[a]t approximately 5:00 pm on March 1, 2023, [they] filed a Notice of Removal of the Complaint on behalf of MYC," commencing this adversary proceeding in the bankruptcy court.  MYC Mot. ¶ 2.  And they state that the Notice of Removal was filed in the Housing Court, and served on the Plaintiffs' counsel, who acknowledged the filing by e-mail and stated "'I will see you in [Housing] court tomorrow for the hearing.'"  *Id*.

---

[2]  Of course, each of these matters would be subject to proof at trial, if the action proceeds, and they are noted here solely for the purpose of summarizing the parties' submissions and to provide context for the parties' arguments.

The MYC Defendants also state that on the following morning, they wrote to the presiding judge in the Housing Court Action and explained that the action had been removed to the bankruptcy court, and cited the relevant statutory and other authorities.  MYC Mot. ¶ 3.  But, they state, the court's clerk refused to accept a copy of the letter, and the Housing Court proceeded with an "inquest," in the nature of an "expedited mini trial on the merits" of the Plaintiffs' claims.  *Id*.  And they note that the judge in the Housing Court Action "acknowledged that the removal documents were filed with the Court but said he would not 'consider them' and proceeded with the trial."  MYC Mot. ¶ 4.

The MYC Defendants state that at that proceeding, Mr. Wilson and Mr. White each testified, and "[a]t the conclusion of the trial, . . . the judge addressed certain comments to the attorneys . . . that his determination was that the petitioners were unlawfully evicted and that an appropriate order would issue."  *Id*.  And they state that on March 6, 2023, as noted above, "the Housing Court issued an order directing the petitioners to be put back into possession."  *Id*.

The MYC Defendants also describe the situation with the Chapter 7 trustee's efforts to market and sell the Property, and their interactions with certain other tenants.  They state that on September 9, 2021, the Court entered an order authorizing the trustee's retention of MYC as her real estate professional to market and sell the Property, and on March 8, 2022, she filed a motion to sell the Property under Bankruptcy Code Section 363.  MYC Mot. ¶¶ 13, 15.  And they state that on April 19, 2022, the Court entered an order authoring the sale of the Property to YM Eastern Parkway LLC ("YM Eastern Parkway"), and that the "Property was to be delivered vacant."  MYC Mot. ¶ 16.

But, they note, as of that date, two apartments were occupied – the second floor unit by Rhonda Henry, a holdover tenant, and the third floor unit by the Debtor, Ms. Cumberbatch.

MYC Mot. ¶¶ 18, 19.  Thereafter, the Chapter 7 trustee reached a settlement with Ms. Henry to move out, and MYC "actually advanced the $18,000 to resolve the dispute with Ms. Henry." MYC Mot. ¶ 22.  And Ms. Cumberbatch vacated the second floor unit "on or about June 15, 2022."  MYC Mot. ¶ 20.  That is, "[a]s of September 30, 2022, the Property was completely vacant" and the sale to YM Eastern Parkway was ready to proceed.  MYC Mot. ¶ 26.

And still, the MYC Defendants state, the path to completing a sale was not smooth.  They state that YM Eastern Parkway "advised the trustee it could not close due to a change in market conditions," and thereafter, on December 1, 2023, the Chapter 7 trustee filed a motion to approve a settlement with YM Eastern Parkway on a partial forfeiture of the contract deposit, and MYC "began looking for a new buyer for the Property."  MYC Mot. ¶¶ 27, 28.

The MYC Defendants next describe the events that led to the discovery of the Plaintiffs at the Property.  From December 16, 2022 to February 20, 2023, MYC went to the Property from time to time, to "confirm it was still vacant and to winterize it," among other reasons.  MYC Mot. ¶ 29.  MYC states that they observed problems from time to time, including a break-in through a side window on the first floor, a kicked-in basement door, and a dislocated common area skylight, among other problems.  MYC Mot. ¶¶ 29, 30, 32.  And on February 20, 2023, the MYC Defendants state, they "arrived at the Property to show it to a potential purchaser," and "for the first time since September 30, 2022, their keys did not work."  MYC Mot. ¶ 35.  They also noticed a new 'Beware of Dog' sign on the front door and cameras facing the front door area.  *Id*.  The MYC Defendants state that they contacted the police and a locksmith, and when the locksmith gained entry to the Property, they "found that the doors were blocked from the inside with wooden bed frames wedged between the door and the wall to prevent entry."  *Id*.

And then, they state:

Yaverbaum, with the police at his side, knocked on the door of the third floor apartment and petitioner Shaquan Wilson answered.  He immediately exited the apartment, closed the door to block a view of inside, and inadvertently locked himself out.  He needed to shoulder the door to get back in.  The police directed Yaverbaum to go downstairs while they questioned Wilson.  They questioned his right to be there.  Wilson claimed to have signed a lease with MYC, which of course was not and could not be true since MYC neither had the authority nor the inclination to sign a lease with him given the need to sell the Property vacant.  Wilson was directed to show some proof of his right to be there.  Wilson produced a fully executed lease for **1533 Eastern Parkway**, not the Property, which is at 1553 Eastern Parkway. . .

Not having shown a clear right to be present in the Property, the police apparently gave Wilson the option of vacating or being arrested.  He chose to vacate, and the police gave him approximately one hour to gather his computer and personal property.  After that, Wilson vacated and MYC through the locksmith once again secured the Property.

MYC Mot. ¶¶ 36, 37 (emphasis in original).

Next, the MYC Defendants state, about one week later, they received the Complaint in the Housing Court Action in the mail. On March 1, 2023, the initial hearings on that Complaint were held in Housing Court, and an inquest was set for the following day, March 2, 2023.  MYC Mot. ¶¶ 38, 39.  And on March 1, 2023, the MYC Defendants removed the action to this Court. MYC Mot. ¶ 40.

The Grounds for Dismissal.  The MYC Defendants make several arguments in support of their Motion to Dismiss this adversary proceeding.

They seek dismissal under Rule 12(b)(1), on grounds that this Court lacks subject matter jurisdiction because, among other reasons, the Plaintiffs did not seek leave of this Court to bring this action against them, as required under the *Barton* doctrine.  They note that "'the *Barton* Doctrine is jurisdictional in nature, and failure to seek leave of the receiver's appointing court bars exercise of subject matter jurisdiction over any third-party suit.'"  MYC Mot. ¶ 58 (quoting *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 774 (S.D.N.Y. 2015).

They also note that "[c]ountless cases have extended the Barton Doctrine to the trustee's professionals including real estate professionals like MYC and Yaverbaum."  MYC Mot. ¶ 60.

In addition, the MYC Defendants seek dismissal of the Complaint under Rule 12(b)(6) on grounds, among others, that "MYC . . . is entitled, as a court-appointed fiduciary, to qualified immunity for its acts taken in the course of its duties to the trustee."  MYC Mot. ¶ 64 (citing cases).  They also state that "court-appointed officers who represent the estate are similarly entitled to the immunity where 'they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.'"  MYC Mot. ¶ 65 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  And here, they state, "MYC was acting squarely within the scope of its retention."  MYC Mot. ¶ 66.

And finally, the MYC Defendants argue that the Complaint should be dismissed under Rule 12(b)(7) on grounds, among others, that the Plaintiffs have not joined a necessary party, the Chapter 7 trustee.  MYC Mot. ¶¶ 67, 68.  They assert:

> The remedy sought in the Complaint was to restore possession to the [Plaintiffs].
> No one except the trustee has the power to restore possession to the [Plaintiffs]
> yet the chapter 7 trustee was not named.  At all times, naming the trustee as a
> party was both necessary and feasible.

MYC Mot. ¶ 67.

### *The Plaintiffs' Opposition to the Motion to Dismiss*

The Plaintiffs have not filed written opposition to the MYC Defendants' Motion to Dismiss.  Instead, the Plaintiffs, by their counsel, have asked the Court to consider their Memorandum of Law in Opposition to the MYC Defendants' application for an Order to Show Cause, which was filed by the Plaintiffs in the Debtor's Chapter 7 bankruptcy case.  *See In re Cumberbatch*, Case No. 21-40360, May 31, 2023 Hearing Tr., ECF No. 242, at 38:12-15, 56:8-14; Plaintiffs' Memorandum of Law in Opposition to Defendant MYC's Order to Show Cause

(the "Pltfs' OSC Opp."), ECF No. 206.[3]

In their OSC Opposition, the Plaintiffs disagree that the *Barton* doctrine shields the MYC

Defendants from responsibility for their actions here.  They point to the *ultra vires* exception

described by the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881).  And they respond

that this exception permits a suit to proceed against a court-appointed receiver without leave of

the appointing court where, "'by mistake or wrongfully, [a] receiver takes possession of property

belonging to another.'"  Pltfs' OSC Opp. ¶ 15 (quoting *Barton*, 104 U.S. at 134).

The Plaintiffs also point to Judiciary Code Section 959(a), previously codified at Section

125, which was amended to bring "trustees" and "debtors in possession" into the category of

parties who may be sued without leave of the appointing court.  Pltfs' OSC Opp. ¶ 16.  That

Section states:

> "Trustees, receivers or managers of any property, including debtors in possession,
> may be sued, without leave of the court appointing them, with respect to any of
> their acts or transactions in carrying on business connected with such property.
> Such actions shall be subject to the general equity power of such court so far as
> the same may be necessary to the ends of justice, but this shall not deprive a
> litigant of his right to trial by jury."

Pltfs' OSC Opp. ¶ 17 (quoting 28 U.S.C. § 959(a)).  And they point to *In re VistaCare Group,*

*LLC,* 678 F.3d 218, 222 (3d Cir. 2012).  They note that there, the court observed that, "[i]n 1948,

Congress amended the statute and extended it to 'trustees' and 'debtors in possession.'" *In re*

*VistaCare Grp., LLC*, 678 F.3d at 226.

---

[3]  The Plaintiffs, who are represented by counsel, have not directly or specifically addressed the
arguments made in the MYC Defendants' Motion to Dismiss filed in this adversary proceeding.
Instead, they invite the Court to review their filing made in a different proceeding – the Debtor's
main bankruptcy case – in connection with a different application and request for relief.  While
the Court has endeavored to identify relevant material in that filing, it is worth noting that this is
not a helpful practice.

The Plaintiffs also respond in the OSC Opposition that the MYC Defendants illegally deprived them of their possessory rights as tenants at the Property, without respect for their due process rights and in violation of New York state law.  Pltfs' OSC Opp. ¶ 19.  They point to Section 853 of New York's Real Property Actions and Proceedings Law and note that it states:

> If a person is disseized, ejected, or put out of real property in a forcible or *unlawful* manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence *or by unlawful means*, he is entitled to recover treble damages in an action therefor against the wrong-doer."

Pltfs' OSC Opp. ¶ 21 (quoting N.Y. RPAPL § 853) (emphasis in original).  And the Plaintiffs respond that for these damages to be due, a tenant needs to prove only that the eviction was unlawful or that unlawful means were used.  Pltfs' OSC Opp. ¶ 23.

In addition, the Plaintiffs respond in the OSC Opposition that they had the right to occupy the apartment at the Property, or alternatively, the right to possession regardless of physical occupancy.  Pltfs' OSC Opp. ¶ 24.  And they note that "[a]ctual possession means '[g]enerally, any overt acts indicating dominion and a purpose to occupy and not to abandon the premises will satisfy the requirements as to possession.'"  *Id.* (quoting *Town of Oyster Bay v. Jacob*, 109 App. Div. 613, 615 (2d Dep't 1905)).  And so, the Plaintiffs state, they had the right to occupy the Property until their lease expired on November 10, 2023, as confirmed by the Housing Court and reflected in its determination on their claims.  Pltfs' OSC Opp. ¶ 25.

And finally, the Plaintiffs respond in the OSC Opposition that this Court should permissively abstain from hearing this matter.  Pltfs' OSC Opp. ¶ 27.  They point to Judiciary Code Section 1334(c)(1), which states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Pltfs' OSC Opp. ¶ 27 (quoting 28 U.S.C. § 1334(c)(l)).

The Plaintiffs state that courts should consider twelve factors, in deciding whether to permissively abstain, and identify these as follows:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in a proceeding of nondebtor parties.

Pltfs' OSC Opp. ¶ 28 (quoting *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)).

The Plaintiffs conclude that the actions of the Chapter 7 trustee and the MYC Defendants indicate, "that they are seeking to shield their illegal actions and continue to illegally lock out the Tenants by seeking to remove this matter" to bankruptcy court, "which would not permit the Tenants to protect their rights as adequately, and would cause excessive delays in their rightful restoration to possession."  Pltfs' OSC Opp. ¶ 30.

### The Applicable Legal Standards

*The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of a claim at the pleading stage for lack of subject matter jurisdiction over the claim, and Bankruptcy Rule 7012(b) makes this rule applicable in adversary proceedings.  Courts in this circuit have stated that "a case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'"

*Hall v. Internal Revenue Service* (*In re Hall*), 629 B.R. 124, 140 (Bankr. E.D.N.Y. 2021)

(quoting *White v. First Franklin Fin. Corp.*, 2019 WL 1492294, at *3 (E.D.N.Y. Apr. 4, 2019)

(quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

> As one court has noted:

> The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."

*Harriott v. Nationstar Mortg. LLC*, 2018 WL 4853045, at *5 (E.D.N.Y. Sept. 28, 2018)

(alteration in original) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.

2008), *aff'd*, 561 U.S. 247 (2010)).

As another court has observed, "[i]n resolving a motion to dismiss for lack of subject

matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to

resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon N.A.*, 2015 WL

4104839, at *1 (E.D.N.Y. July 8, 2015) (citing *Morrison*, 547 F.3d at 170). In this context, when

an adversary proceeding has been brought and there is an associated bankruptcy case, the record

of that bankruptcy case may well amount to such "materials beyond the pleadings" of the

adversary proceeding.

And "dismissal is mandatory" where a court finds that it does not have subject matter

jurisdiction to adjudicate a dispute. *CIT Bank, N.A. v. Jach*, 2019 WL 1383850, at *3 (E.D.N.Y.

Mar. 27, 2019). Indeed, a motion may not even be necessary where subject matter jurisdiction is

lacking. As Rule 12(h)(3) states, "[i]f the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

*The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted, and Bankruptcy Rule 7012(b) makes this rule applicable in adversary proceedings.  As the Supreme Court has held, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.'"  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).  But a court is not required to accept as true those allegations that amount to no more than legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Twombly*, 550 U.S. at 555.  And of course, a motion to dismiss under Rule 12(b)(6) tests the adequacy of the complaint and its well-pleaded factual allegations, not the sufficiency of the proof.  *Doyaga v. Markisich* (*In re Markisich*), 655 B.R. 670, 685 (Bankr. E.D.N.Y. 2023).

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (quoting *Hayden v. Cty. of Nassau,* 180

F.3d 42, 54 (2d Cir. 1999) (stating that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents incorporated by reference)).  And here, that may include consideration of the record in the Debtor's Chapter 7 bankruptcy case.

*The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(7)*

Federal Rule of Civil Procedure 12(b)(7) permits a party to seek dismissal of a claim at the pleading stage if the plaintiff has failed to join a necessary party as required by Rule 19.  And Bankruptcy Rule 7012(b) makes Rule 12(b)(7) applicable in adversary proceedings.

Rule 19(a)(1) provides that an absent party is "required" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest in the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Courts apply "a two-part test for determining whether the court must dismiss an action for failure to join an indispensable party" under these Rules.  *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010).  First, the court must determine whether, under Rule 19(b), the absent party is necessary for the action to proceed.  *Id.*  And second, if the absent party is required under Rule 19(a) and cannot be joined for jurisdictional or other reasons, the court must evaluate whether the party is, in the traditional terminology, indispensable under Rule 19(b).  *Id.*  And finally, if the absent party is "indispensable, then the court must dismiss the action."  *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000).

## Discussion

The MYC Defendants' Motion to Dismiss advances, in substance, three alternative

grounds on which this case should be dismissed.  These are first, that under Rule 12(b)(1) and the *Barton* doctrine, this Court lacks subject matter jurisdiction to hear this action; second, that under Rule 12(b)(6), the Plaintiffs have not stated a plausible claim for relief against them because they have qualified immunity, as court-appointed fiduciaries, for acts taken in the course of their duties to the Chapter 7 trustee; and third, that under Rule 12(b)(7), the Plaintiffs have not named a necessary party, the Chapter 7 trustee.

The Court considers each of these arguments in turn.

*Whether the Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) and the Barton Doctrine*

The MYC Defendants first seek dismissal of the Complaint under Rule 12(b)(1) on grounds that the Plaintiffs did not seek leave of this Court to bring the action against them, as required by the *Barton* doctrine.

This doctrine has its roots in the Supreme Court's decision more than 140 years ago in *Barton v. Barbour,* 104 U.S. 126 (1881).  There, the Supreme Court held:

> [W]hen the court of one State has . . . property in its possession for administration as trust assets, and has appointed a receiver to aid in the performance of its duty by carrying on the business to which the property is adapted . . . a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him. . .

*Barton*, 104 U.S. at 136-37.

In recent years, bankruptcy and other courts within and outside this Circuit have applied the *Barton* doctrine in the context of bankruptcy cases, bankruptcy courts, bankruptcy trustees, and a bankruptcy trustee's retained professionals, to conclude that in the absence of permission from the bankruptcy court, an action may not be commenced against a bankruptcy trustee or court-appointed officer in a bankruptcy case for actions taken in that trustee's or officer's official role:

> Under the doctrine of *Barton v. Barbour*, 104 U.S. 126, 26 L. Ed. 672 (1881), 'a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity.'

*In re Gen'l Growth Props., Inc.*, 426 B.R. 71, 74-75 (Bankr. S.D.N.Y. 2010) (quoting *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 970 (9th Cir. 2005) and citing cases).

And as one bankruptcy court has observed, "[c]ourts have consistently applied the *Barton* Doctrine broadly to prevent suits against court-appointed officers in a wide variety of circumstances." *MF Global Holdings Ltd. v. Allied World Assur. Co.* (*In re MF Global Holdings Ltd.*), 562 B.R. 866, 876 (Bankr. S.D.N.Y. 2017). The court also noted that "at least one district court within this [Second] Circuit has affirmed a bankruptcy court's determination that the Doctrine's protection extended to both the trustee and counsel for the trustee" – that is, to the trustee and the trustee's retained professionals. *In re MF Global Holdings Ltd.*, 562 B.R. at 875 (citing *Peia v. Coan*, 2006 WL 798873, at *2 (D. Conn. Mar 23, 2006)). And this makes sense, that court reasoned, because "the *Barton* Doctrine protects parties assisting a trustee in pursuing its objectives . . . [and] in undertaking their official obligations." *In re MF Global Holdings Ltd.*, 562 B.R. at 876.

Courts similarly agree that a trustee's retained professionals, including court-appointed real estate professionals, come within the scope of the *Barton* doctrine's requirements. As the Sixth Circuit observed, it applies both to the trustee and to "court appointed officers who represent the estate, [because they] are the functional equivalent of a trustee, [when] they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *In re DeLorean Motor Co.*, 991 F.2d at 1241 (citing *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (B.A.P. 9th Cir. 1989)).

And it has been recognized that court-appointed real estate professionals fall within this "functional equivalent" definition. *Falck Props., LLC v. Walnut Capital Real Estate Servs.* (*In re Brownsville Prop. Corp.*), 473 B.R. 89, 91-92 (Bankr. W.D. Pa. 2012) (applying *Barton* doctrine to real estate professionals appointed by court to assist bankruptcy trustee); *Price v. Deeba*, 2014 WL 4660810, at *8 (W.D. Okla. Sept. 17, 2014) (granting motion to dismiss based upon the court's application of the *Barton* doctrine to "the real estate management companies employed by the trustee"); *Yan Sui v. Marshack*, 2014 WL 3694144, at *10-11 (C.D. Cal. June 20, 2014) (granting motion to dismiss based upon the court's application of the *Barton* doctrine to the real estate agent employed by the trustee and appointed by the court).

Here, the record shows that in this adversary proceeding, as originally commenced in the Housing Court, the Plaintiffs have named MYC & Associates, Inc., and Mr. Yaverbaum – the MYC Defendants – as defendants in the action.  And the record also shows that the subject of that action, and of the claims against the MYC Defendants, is, in substance, the asserted unlawful eviction by the MYC Defendants and others of the Plaintiffs from an apartment at the Property.

The record also shows that the MYC Defendants were retained as the Chapter 7 trustee's real estate professionals by order entered in this Court in the Debtor's bankruptcy case, and that their duties include, "marketing and selling the Real Property under the terms of the Broker Agreement."  *In re Cumberbatch*, Case No. 21-40360, Order Authorizing Retention of MYC & Associates, Inc. as Broker for Trustee to Market and Sell Real Property, ECF No. 112.

The record further shows that the actions assertedly taken by the MYC Defendants at the Property that form the basis for the Plaintiffs' Complaint were taken by them in their roles as the Chapter 7 trustee's retained real estate professionals.  The Court's Retention Order states that the

MYC was "retained as broker for the purposes of marketing and selling the Real Property". *In re Cumberbatch*, Case No. 21-40360, Order Authorizing Retention of MYC & Associates, Inc. as Broker for Trustee to Market and Sell Real Property, ECF No. 112. And indeed, as the MYC Defendants state:

> MYC was at the Property to show it to a potential purchaser who appeared with his wife ready to view the Property. When MYC learned that the locks had been changed and that it could no longer access the Property to show it, MYC contacted the trustee and, out of concern for their own safety, contacted the police to safely check the Property for trespassers.

MYC Mot. ¶ 61.

> And the MYC Defendants explain:

> MYC left the police alone with the petitioners so the police could determine for themselves whether the petitioners had any valid claim to be on the Property. The police concluded they did not. Once the police determined that the petitioners could not establish a right to remain in the Property, the police gave them the option of vacating peacefully or being arrested.

MYC Mot. ¶ 61. As they conclude, "MYC was acting in its official capacity as an estate professional showing the Property at the time of the incident." MYC Mot. ¶ 61.

And finally, here, the record shows that the Plaintiffs did not seek, or receive, "leave of the bankruptcy court before it initiates an action in another forum against [the] bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *In re Crown Vantage, Inc.*, 421 F.3d at 970. This Court appointed MYC & Associates, Inc., this Court's leave would be required to initiate an action against MYC & Associates, Inc. for acts done in its capacity as real estate professional for the Chapter 7 trustee in this case, and it is beyond dispute that such leave was not sought or obtained.

To be sure, in the OSC Opposition, the Plaintiffs point to the *ultra vires* exception to the *Barton* doctrine that permits a suit to proceed without leave of the appointing court – here, the

bankruptcy court – where, "'by mistake or wrongfully, [a] receiver takes possession of property belonging to another.'"  Pltfs' OSC Opp. ¶ 15 (quoting *Barton*, 104 U.S. at 134).

But the Plaintiffs do not point to any persuasive or credible basis to conclude, or even to raise a genuine dispute or question, that the MYC Defendants "by mistake or wrongfully" attempted to take possession of their property.  And of course, they do not make this argument in this adversary proceeding, or in response to the MYC Defendants' Motion to Dismiss, but in the main bankruptcy case in opposition to the Emergency Motion of MYC & Associates, Inc. and Mr. Yaverbaum.  *See* n.2, *supra*.

In their OSC Opposition, the Plaintiffs also cite Judiciary Code Section 959(a), and in particular, note that as amended and recodified in 1948, this Section states in part that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a).  *See* Pltfs' OSC Opp., ¶ 17.

But this is only part of the picture.  In *In re VistaCare Group, LLC*, the Third Circuit considered whether Section 959(a) somehow takes trustees outside the scope of the *Barton* doctrine's requirement that leave of the appointing court must be obtained to bring an action.  *In re VistaCare Group, LLC*, 678 F.3d at 225-26.  The Third Circuit undertook a careful analysis of the history and context for Section 959(a) as originally adopted in 1887, just six years after the Supreme Court's *Barton* decision.  It noted the dissenting views of Justice Miller, who drew a distinction between a trustee or receiver who is, in substance, operating a business, and one who is simply conducting a liquidation.  The Third Circuit observed:

> Justice Miller opined that it would be fundamentally unfair to require a party to obtain court permission to pursue claims against the receiver arising out of the receiver's operation of the business . . . In contrast, Justice Miller agreed with the majority that "[w]hen a receiver [was] appointed to wind up a defunct corporation

. . . [and] his sole duty [was] to convert the property into a fund for the payment of debts, . . . a very strong reason exist[ed] why the court which appointed him should alone control him in the performance of his duty."

*In re VistaCare Group, LLC*, 678 F.3d at 226 (quoting *Barton*, 104 U.S. at 138 (Miller, J., dissenting)).  The Third Circuit concluded that "implicit in [Section 959(a)] is a general rule that a party seeking to sue a receiver or trustee must first obtain permission from the appointing court."  *In re VistaCare Group, LLC*, 678 F.3d at 225-26.

Other courts, including the Second Circuit, are in accord.  *See, e.g.*, *In re Lehal Realty Assocs.*, 101 F.3d 272, 277 (2d Cir. 1996) (stating that "[w]e agree . . . that § 959 does not apply where, as here, a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate").  *See generally, Phoenician Mediterranean Villa, LLC v. Swope* (*In re J & S Props., LLC*), 545 B.R. 91, 113 (Bankr. W.D. Pa. 2015) (observing that "a Chapter 7 Trustee has a duty to secure and preserve estate assets, including changing the locks to a building when circumstances warrant"); U.S. Dep't of Justice, Executive Office for U.S. Trustees, Handbook for Chapter 7 Trustees § 4.C.3.f  (Oct. 1, 2012) (stating that "[i]n those cases where the property appears to have value for the estate, the trustee must obtain control over the property, which may include changing the locks at the premises, hiring guards, etc.  The trustee also must immediately take all other steps which may be reasonably necessary to preserve the assets").

For these reasons, and based on the entire record, the Court finds and concludes that the MYC Defendants have established that the Complaint must be dismissed under Rule 12(b)(1) on grounds that the Plaintiffs did not seek leave of this Court to bring this action against them, as required by the *Barton* doctrine.

*Whether the Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Based on Qualified Immunity*

In the alternative, the MYC Defendants seek dismissal of the Complaint under Rule 12(b)(6) on grounds, in substance, that the Complaint does not state a plausible claim against them because, as court-appointed fiduciaries, they are entitled to "qualified immunity for . . . acts taken in the course of [their] duties to the trustee." MYC Mem. ¶ 64.

To survive Rule 12(b)(6) scrutiny, the Supreme Court has held that a plausible claim must be stated – that is, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And mere speculation is insufficient. As the Supreme Court observed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But questions of proof are left for another day.

In considering a Rule 12(b)(6) motion, courts often enumerate the elements of a cause of action, and then scrutinize the complaint to determine whether the elements of the claim, and the claim as a whole, has been plausibly set forth in the complaint. But another pathway to answering the question of whether a plausible claim has been stated is whether an insurmountable obstacle to a plausible claim is apparent from the factual allegations of the complaint. And here, the MYC Defendants ask the Court to dismiss the Complaint against them on grounds that they have qualified immunity for their actions "'at the direction of the trustee and for the purpose of administering the estate or protecting its assets.'" MYC Mem. ¶ 65 (quoting *In re DeLorean Motor Co.*, 991 F.2d at 1240).

At the outset, courts agree that a defendant's assertion of qualified immunity may appropriately be raised at the outset of a case, and in the context of a Rule 12(b)(6) motion to dismiss. As the Eleventh Circuit observed, "[t]here can be no doubt that a motion to dismiss under Rule 12(b)(6) is a proper vehicle to defeat a complaint that, on is face, cannot overcome an

immunity defense." *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1309 (11th Cir. 2007). *See In re Lunan*, 489 B.R. at 729 (stating that "[a]ssertions of immunity may properly be considered in a Rule 12(b)(6) motion to dismiss").

Courts also agree that a bankruptcy trustee and her retained professionals, like other "court appointed officers who represent the estate are . . . entitled to . . . immunity where 'they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.'" *In re Lunan*, 489 B.R. at 729 (quoting *In re DeLorean Motor Co.*, 991 F.2d at 1240). That is, "[a] bankruptcy trustee is 'entitled to broad immunity from suit when acting within the scope of his authority and pursuant to court order.'" *In re Lunan*, 489 B.R. at 729 (quoting *In re McKenzie*, 476 B.R. 515, 525 (E.D. Tenn. 2012)).

So here, the Court considers whether it is plain from the Complaint's allegations and the record of the Debtor's Chapter 7 bankruptcy case that a plausible claim has not been stated against the MYC Defendants because, as court-appointed fiduciaries, they are entitled to qualified immunity for acts that they took in the course of their duties to the Trustee.

As the Supreme Court has stated, the doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations and citations omitted). And a "clearly established right" is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id*. (internal quotation and citation omitted).

And here, as described above, the record shows that the Plaintiffs' allegations in this adversary proceeding, viewed together with and in the context of the record in the Debtor's Chapter 7 bankruptcy case, establish that the subject of this action, and of the Plaintiffs' claims

against the MYC Defendants, is the asserted unlawful eviction by the MYC Defendants and

others of the Plaintiffs from an apartment at the Property.  The record also shows that the MYC

Defendants were retained as the Chapter 7 trustee's real estate professionals by order entered in

this Court in the Debtor's bankruptcy case, and that their duties include, "marketing and selling

the Real Property."  *In re Cumberbatch*, Case No. 21-40360, Order Authorizing Retention of

MYC & Associates, Inc. as Broker for Trustee to Market and Sell Real Property, ECF No. 112.

And the record shows, as described above in the context of the MYC Defendants' request

to dismiss this action under Rule 12(b)(1) and the *Barton* doctrine, that:

> MYC was at the Property to show it to a potential purchaser who appeared with
> his wife ready to view the Property.  When MYC learned that the locks had been
> changed and that it could no longer access the Property to show it, MYC
> contacted the trustee and, out of concern for their own safety, contacted the police
> to safely check the Property for trespassers.

MYC Mot. ¶ 61.

As the MYC Defendants further state:

> MYC left the police alone with the petitioners so the police could determine for
> themselves whether the petitioners had any valid claim to be on the Property.  The
> police concluded they did not.  Once the police determined that the petitioners
> could not establish a right to remain in the Property, the police gave them the
> option of vacating peacefully or being arrested.

*Id*.  As they conclude, "MYC was acting in its official capacity as an estate professional showing

the Property at the time of the incident."  *Id*.

And as also noted above, while the Plaintiffs did not file written opposition to the MYC

Defendants' Motion to Dismiss in this adversary proceeding, they point in their OSC Opposition

to the *ultra vires* exception to the *Barton* doctrine and argue, in substance, that actions that

exceed a defendant's official functions in their appointed role should not be protected from

scrutiny.  *See* Pltfs' OSC Opp. ¶ 15.

But this assertion, without more, cannot save the Plaintiffs' claims from scrutiny for plausibility under Rule 12(b)(6).  And here, the Plaintiffs' own allegations, viewed together with the record of the Debtor's Chapter 7 case, show that the MYC Defendants were acting in their official roles as the Chapter 7 trustee's retained professionals in connection with these matters, and are entitled to qualified immunity for the actions that they took at the Property, as retained real estate professionals in the Debtor's Chapter 7 case.

This Court authorized the retention of MYC & Associates, Inc., "as real estate broker to market and sell the Debtor's real property known as and located at 1553 Eastern Parkway, Brooklyn, New York 11233." *In re Cumberbatch*, Case No. 21-40360, Order Authorizing Retention of MYC & Associates, Inc. as Broker for Trustee to Market and Sell Real Property, ECF No. 112.  In such capacity, MYC & Associates, Inc. was specifically retained, "for the purposes of marketing and selling the Real Property." *Id.*  On February 20, 2023, the MYC Defendants arrived at the Property, "to show it to a potential purchaser," an act that is squarely within the scope of its court-ordered retention.  MYC Mot. ¶ 61.

For these reasons, in the alternative, and based on the entire record, the Court finds and concludes that the MYC Defendants have established that the Complaint must be dismissed under Rule 12(b)(6) on grounds that under the doctrine of qualified immunity, the Plaintiffs' claims against them are not plausible.

### *Whether the Complaint Should Be Dismissed Pursuant to Rule 12(b)(7) Based on Failure to Join a Necessary Party*

In the alternative, the MYC Defendants seek dismissal of the Complaint under Rule 12(b)(7) on grounds that the Plaintiffs have not joined a necessary party, the Chapter 7 trustee. MYC Mem. ¶¶ 67-69.  They state that "the Complaint seeks to restore possession to the petitioners who the police apparently determined to be trespassers."  MYC Mem. ¶ 67.

Rule 12(b)(7) requires than an action must be dismissed if plaintiff has failed to join a necessary party under Rule 19.  And Rule 19(a)(1)(A), in turn, makes a person a necessary party if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

The MYC Defendants assert that "[t]his is a chapter 7 case and the chapter 7 trustee has the superior right to all of the property of this chapter 7 estate including the Property."  MYC Mem. ¶ 67.  And they observe that this circumstance was made known to the Plaintiffs and the judge in the Housing Court Action "no later than March 1, 2023 when the chapter 7 trustee appeared in person at the first hearing in the Housing Court Matter."  *Id.*

The MYC Defendants also point out that "[t]he remedy sought in the Complaint was to restore possession to the petitioners.  No one except the trustee has the power to restore possession to the petitioners yet the chapter 7 trustee was not named.  At all times, naming the trustee as a party was both necessary and feasible."  *Id.*  And they note that "[h]ere, it is self-evident that only the person with the legal right to possession and control of a property can put someone into possession."  MYC Mem. ¶ 68.

As a starting point, it is plain that under the Bankruptcy Code, "the commencement of a [bankruptcy] case . . . creates an estate . . . comprised of all the . . . property, wherever located and by whomever held."  11 U.S.C. § 541(a).  It is equally plain that the Chapter 7 trustee serves as the fiduciary of a Chapter 7 debtor's bankruptcy estate.  11 U.S.C. § 323(a).  Bankruptcy Code Section 704 provides that a Chapter 7 trustee's duties include "[to] collect and reduce to money the property of the estate for which such trustee serves" and to "be accountable for all property received."  11 U.S.C. §§ 704(a)(1), (a)(2).  As one bankruptcy court has observed, "[a] chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to

maximize distribution to unsecured creditors, whether priority or general unsecured." *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016) (collecting cases).

And similarly, it is plain that where real property is property of the Chapter 7 debtor's estate, it is the Chapter 7 trustee –not the debtor, and not anyone else – that has the legal right, with bankruptcy court authority and subject to court approval, to enter into leases or to restore a tenant to possession.  Once the Debtor's Chapter 7 petition was filed, "only the Trustee had the authority to use, sell or *lease* property of the estate pursuant to Bankruptcy Code § 363." *Kirschenbaum v. Nassau Cty. Dist. Atty.* (*In re Vitta*), 409 B.R. 6, 16 (Bankr. E.D.N.Y. 2009) (emphasis added).  *See Vélez v. Pérez León* (*In re Pérez León*), 2013 WL 5232331, *5 (Bankr. D.P.R. Sept. 16, 2013) (stating that "[t]he bankruptcy trustee, as representative of the estate, has exclusive authority to use, sell, or lease estate property" (citing 11 U.S.C. §§ 323(a), 363(b)(1))). An agreement by the Chapter 7 debtor to any such transfer of property of the estate, "without prior notice and a hearing is void and of no force and effect."  *In re Vitta.* 409 B.R. at 16.

Here, the record shows that the Property is part of the Debtor's Chapter 7 bankruptcy estate.  *See In re Cumberbatch*, Case No. 21-40360, Schedule A/B: Property, ECF Nos. 67, 120. And as a consequence, the Chapter 7 trustee – and only the Chapter 7 trustee – has the legal right, with the authority of the bankruptcy court, to administer that Property as property of the Debtor's bankruptcy estate.  *See In re Cumberbatch*, Case No. 21-40360, Order Pursuant to 11 U.S.C. §§ 105 and 363 Authorizing and Approving Terms and Conditions of Trustee's Sale of Debtor's Real Property, ECF No. 143.

And here, the record also shows that in the Complaint in the Housing Court Action, the Plaintiffs seek an order restoring them to possession of an apartment located at the Property, and other relief related to the Plaintiffs and their claim to have a lease to occupy an apartment at the

Property.  *See* Order to Show Cause in Lieu of Notice of Petition, at 1 (annexed to the Notice of Removal, ECF No. 1).

And the record further shows that the relief that the Plaintiffs seek here cannot be accomplished in the absence of the Chapter 7 trustee as a party.  Put another way, applying the standards under Rule 19(a)(1)(A), the Chapter 7 trustee is a necessary party because, "in [her] absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).

For these reasons, in the alternative, and based on the entire record, the Court finds and concludes that the MYC Defendants have established that the Complaint must be dismissed under Rule 12(b)(7) on grounds that the Plaintiffs have not joined a necessary party, the Chapter 7 trustee, as required by Rule 19(a)(1)(A).

*            *            *

In sum, based on the entire record, and for the reasons stated herein, the Court finds and concludes that the MYC Defendants have established that the Complaint must be dismissed under Rule 12(b)(1) on grounds that the Plaintiffs did not seek leave of this Court to bring this action against them, as required by the *Barton* doctrine; and alternatively, under Rule 12(b)(6) on grounds that under the doctrine of qualified immunity, the Plaintiffs' claims against them are not plausible; and alternatively, under Rule 12(b)(7) on grounds that the Plaintiffs have not joined a necessary party, the Chapter 7 trustee, as required by Rule 19(a)(1)(A).

<h2 style="text-align:center"><u>Conclusion</u></h2>

For the reasons stated herein, and based on the entire record, the Motion to Dismiss of the MYC Defendants pursuant to Bankruptcy Rule 7012 and Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7)(7), is granted.  An order in accordance with this Memorandum

Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
February 15, 2024

Elizabeth S. Stong
United States Bankruptcy Judge